| | | |
|---|---|---|
| LEBA CHAJET<br>6505 Western Run Drive<br>Baltimore, Maryland 21215 | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | BALTIMORE CITY |
| DOUGLAS HEINRICHS, M.D.<br>5034 Dorsey Hall Drive, Suite 103<br>Ellicott City, Maryland 21042 | *<br>* | RDB 10 CV 2300 |
| and | * | |
| JULIAN JAKOBOVITS, M.D.<br>2835 Smith Avenue<br>Baltimore, Maryland 21209 | *<br>* | Case No.: |
| and | * | |
| JULIAN JAKOBOVITS, M.D., L.L.C.<br>2835 Smith Avenue<br>Baltimore, Maryland 21209 | *<br>* | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiff, Leba Chajet, by her undersigned counsel, Paul D. Bekman, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, sues the Defendants, Douglas Heinrichs, M.D., Julian Jakobovits, M.D., and Julian Jakobovits, M.D., L.L.C. and states:

1. This case was originally filed in the Health Care Alternative Dispute Resolution Office. Plaintiff elected to waive arbitration. A copy of the Order of Transfer and Certificate of Qualified Expert and Report are attached as <u>Exhibit A</u>.

2. Jurisdiction is proper in this forum as the amount in controversy exceeds $30,000.

3. Venue is proper in Baltimore City as there is no venue common to all of the health

care providers and Dr. Jakobovits regularly engages in a business there. Venue may be proper elsewhere.

4. That at all times hereinafter set forth, the Defendant, Douglas Heinrichs, M.D., held himself out to the Plaintiff and to the general public that he was an experienced, competent and able physician who possessed and provided that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and in particular, psychiatry, and as such had a duty to the Plaintiff to render that degree of care and treatment to her which is ordinarily rendered by those who devote special study and attention to the practice of medicine, and, in particular, psychiatry.

5. That at all times hereinafter set forth, the Defendant, Julian Jakobovits, M.D., held himself out to the Plaintiff and to the general public that he was an experienced, competent and able physician who possessed and provided that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and in particular, internal medicine, and as such had a duty to the Plaintiff to render that degree of care and treatment to them which is ordinarily rendered by those who devote special study and attention to the practice of medicine, and, in particular, internal medicine. At all relevant times, Dr. Jakobovits was acting as an agent, servant or employees of Julian Jakobovits, M.D., L.L.C.

6. Leba Chajet began treatment with Dr. Heinrichs in June 2006 at the referral of her therapist, Joan Krystal, L.C.S.W. At the time, she was using Zoloft, 50 mg. Dr. Heinrichs increased the dosage of Zoloft to 100 mg. He diagnosed her as having major depression, generalized anxiety disorder, obsessive-compulsive disorder and dysthymic disorder. He wanted to rule out bipolar disorder and attention deficit disorder.

7. Dr. Heinrichs increased the Zoloft to 150 mg per day at the July 6, 2006 visit.

8. In September 2006, Dr. Heinrichs discontinued the Zoloft and switched Ms. Chajet to Cymbalta, 60 mg.

9. Ms. Chajet had a reaction to Cymbalta whereby her tongue swelled; accordingly she resumed taking Zoloft, 150 mg.

10. On November 10, 2006, Dr. Heinrichs gave Ms. Chajet a starter pack of Lamictal. He instructed her to take the Lamictal 25 mg. for 14 days, 50 mg for 14 days, 100 mg for 7 days and 200 mg thereafter. He decreased the Zoloft to 100 mg. Lamictal is a drug given for treatment of bipolar disorder. He did not offer alternative treatments.

11. On December 5, 2006, Leba Chajet contacted Dr. Heinrichs and reported that she was vomiting after increasing the Lamictal to 50 mg. He told her to take 25 mg. twice a day.

12. On December 7, 2006, Leba Chajet contacted Dr. Heinrichs again complaining of fever and sores in her mouth. He left her a message to stop the Lamictal immediately and call him or go to the emergency room.

13. Ms. Chajet called Dr. Heinrichs back; he told her to see her primary care physician or go to the emergency room.

14. Ms. Chajet went to see her primary care physician, Julian Jakobovits, M.D. She reported several days of having lip/mouth/eye itch and a belly rash. Her mouth, touch and cheeks had exudative eruptions. She had crusty eyes. His impression was candida versus Stevens Johnson syndrome from Lamictal. He obtained cultures and gave her prescriptions for an anti-fungal medication and steroids.

15. Dr. Heinrichs spoke with Ms. Chajet that afternoon and learned that she had

seen her primary care physician. At 9:10 p.m., Dr. Heinrichs received a message from Ms. Chajet that she had a high fever and could not keep down medications and had lesions in her mouth. He called to advise that she should go to the emergency room.

16. Ms. Chajet presented at the GBMC emergency room and was admitted shortly thereafter with a diagnosis of Stevens-Johnson syndrome. She was transferred to the burn unit at Johns Hopkins Bayview. Hospital where she stayed three weeks.

17. Ms. Chajet has permanent injuries from the Stevens Johnson Syndrome. Her body was burned; she underwent multiple surgical procedures; she can't eat raw fruit or vegetables; she developed acid reflux; she lost her fingernails and toenails and developed infections; she suffered visual impairments and has severe scarring that prevents her from keeping her eyes open. She has persistent pain. She can no longer drive.

18. The Defendant, Douglas Heinrichs, M.D., was negligent in that he:

    a. Prescribed Lamictal prior to diagnosing Plaintiff with bipolar disorder;

    b. Failed to inform the Plaintiff of treatment options;

    c. Failed to gain information about additional symptoms on December 5 and failed to advise Plaintiff to stop her Lamictal and Zoloft;

    d. Failed to evaluate her or refer her for additional medical care that day;

    e. And was otherwise negligence, careless and reckless.

19. The Defendant, Julian Jakobovits, M.D., was negligent in that he:

Failed to advise Plaintiff to stop taking Zoloft;

a. Failed to arrange for immediate inpatient admission so that IV therapies could be administered;

b. And was otherwise negligence, careless and reckless.

19. As a direct result of the negligence of the Defendants, Leba Chajet was caused to suffer painful and permanent injuries to her body, was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur hospital, medical expenses and was caused to incur other financial losses and damage.

20. All of the losses, damages and injuries sustained by Leba Chajet were caused by the negligence of the Defendants, without any negligence on the part of Plaintiff contributing thereto.

WHEREFORE, the Plaintiff, Leba Chajet, claims damages against the Defendants, Douglas Heinrichs, M.D., Julian Jakobovits, M.D., and Julian Jakobovits, M.D., L.L.C,. in an amount to be determined by a jury.

*Paul D. Bekman /wls*
PAUL D. BEKMAN
SALSBURY, CLEMENTS, BEKMAN,
   MARDER & ADKINS, L.L.C.
300 W. Pratt Street
Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff